Please, the Court. Judge Oliver Wendell Holmes said that a page of history is worth a volume of logic. I have asked the Court to take a judicial notice. Actually, we've got a motion pending to supplement the record, but the 2008 cycle of the initiatives in the ballot is already in the record. But this is a better visual look of it so you can better understand it. But the point I'm trying to make is, historically, every single initiative filed in the 2008 cycle within Nevada has been taken off the ballot. Never made it to the ballot. In other words, they tried to get it on, but they couldn't get it on because of the statutes that we're attacking here, because of the single subject and the narrow, extremely narrow way that they're applying it. For example, the First Amendment of the United States Constitution, it's got five subjects in it. It couldn't be — it couldn't qualify in Nevada. And all it says — So what? I mean, there isn't — there wasn't a single subject requirement at the Constitutional Convention, I don't think. I agree with that, but I'm showing the illogic of it and how it so limits speech. See, the single subject — So are you saying that there's — that you can't have a single subject requirement at all? If you're going to have it, it should be logical. It should be something you understand. It should be something that somebody can comply. So you're not saying you can't have one. You're just — you're saying — Well, I would like it not — I would like it abolished, I can tell you, because it limits every other subject in the English language except the one you have here. And the Nevada one should be called the wrong subject act, because if you try to put a subject on that affects the casinos, if you put one on to mining or political corruption, you will be sued right and left. You see, the Secretary of State don't sue us, Your Honor. If there's a second — if — if you fall short of the single subject requirement, why don't you just file a second initiative? I'll tell you, I'm glad you asked that. Okay. Because here's the problem. In Nevada, there's another section in Article 19 of the Constitution that says if you mandate something that costs money, you should — you have to also, in that same initiative, provide for raising the funds to pay for it. So we're in a catch-22. For example, I — yes, that's true. You have to provide in that same initiative, not a separate one. As the judge below seemed to think, oh, you've got to just keep filing more initiatives. That won't work, because you'll get struck, as the teachers' union did, by not providing in that particular initiative for raising the money to pay for it. That doesn't have anything to do with the particular law that you proposed here, in other words. Yes, it does, because we're in a catch-22. If we mandate something that costs money — if we mandate something that costs money, we have to mandate how to raise it. If we raise money and mandate it, it violates a single subject. For example, I filed an initiative petition to raise the gaming tax in 208. The state court in Carson City said, Kermit, you can raise all the taxes you want to, but if you earmark it, which I did, that violates a single subject, because I provided — it goes to schools, provided it goes to roads, I provided it for solar and wind. And they said, nope, that violates a single subject. It is so narrowly construed that Dick ran up the stairs as three subjects. For example, one of the initiatives that's not on this — that's not shown on his website, a religious zealot put on one that says, in the great state of Nevada, the word person is all human being, all live human beings. Fourteen words. And the judge said, that is a myriad of subjects, and struck it. Now, I didn't agree with the purpose behind it, but the point is 14 words, and that's all it said. And the court struck it as a myriad of subjects. We have — this is the case of first impression for void for vagueness and for overbroad. And in Buckley, they had to — they wore badges, and they said, with your name on it, said that was a severe burden. And you had to fill out reports, finance reports. I would trade that in a heartbeat for this statute. That, to me, wasn't that severe, but the Supreme Court said it was. Well, but the reason the Supreme Court said that was is that petition gathering is itself a First Amendment-protected activity. I mean, that's different from what you're talking about. We don't get there. We can't gather them. We can't gather them because our statute also provides that if you change one word, whatever you've gathered at that point is void. We can't use them. So what we do is we get — we file a petition. We get sued. We get sued immediately by all of the opponents from Mining, Gaming, Chamber of Commerce, North, South, East, and West. All of the usual suspects sue us, run us out of time because we only have eight months to do it. And so what they do is they drag you for about four or five months. Whether or not they win or lose, they don't care because the point is to run you out of time. So when they run us out of time, now you've got maybe two months to get 10 percent and all of — and they have another statute, which is also I brought up to this court, and another case which requires now 10 percent of the signatures of the last general election in all of the initiative districts, in all of them. So now you've got less than one or two months to go get all this. So it is a severe burden on free speech. And I think it is irrational. Certainly, it's viewpoint discrimination because if you want — as I said, if you want one against gaming or mining or political corruption or cronyism, you're going to get sued. You're going to get sued immediately. And Sharon Angle got stuck for $25,000 for fighting hers, and she tried three different times. One time, when she got sued for single subject and the description in effect, the judge said, well, why don't you go write it, Counselor? You sued him. You go write it. They waited 60 days, and they didn't do it. So they had to refile it again. They got sued again. So it's unbelievable what's going on down here, and it is a severe burden. And, for example, in Campbell, which they cite as part of their reasoning on this thing, Campbell, California had a court procedure where when you file one, the secretary of state, if you don't like it, he'll rewrite it for you. Yeah, and the other part, your opponents can't participate in that. And if you don't like it, you appeal it directly to the Supreme Court. I wish we had that. Our secretary of state has deputized all of the enemies to come fight us and attack us. Well, he goes and says, I've got nothing to do with this. You guys go fight it out. On his website, he shows many of these are withdrawn. I can tell you they were taken off, not withdrawn. They were taken off by the courts in Carson City or the Supreme Court. This is just a huge burden, whether or not you want to call it core political speech like Buckley or you want to take the lesser standards, it is a severe burden. I will trade it in a heartbeat for those things like in Buckley or any of those what they call severe burdens. We have, as I said, we can't write multiple initiatives because they have to be in the same one if they involve money. It has chilled the people in Nevada to the point where I've got three I'd like to write, but I'm not going to do it if this court don't knock it off. We even tried, for example, in February of 08, we tried to put on a referendum to remove the single subject because I thought it would be kind of cute to file a referendum to remove the single subject and have them sue because the referendum violated the single subject. The Secretary of State seen what we were doing and he said, no, you got the wrong form. Now, by March, now it's March, and I wouldn't have time to get the signatures, so I would have to sue the court just to get it back on for that. So I just gave up. This is what we're facing down here, to please the court, and it is severe burden. I think it's core political speech because the Supreme Court, all the cases went to the Supreme Court, held that they were core, even the collection. We can't even collect signatures because they'll be voided if they change one word. And typically when you get to Carson City, the judge says to you, well, you know, they don't like the description. In fact, change a couple of words here. If he does, all the signatures you have acquired is dead, and they know that. That's how bad it is. Basically, every court to have considered a single subject law has upheld it in view of the type of burden it imposes on free speech and in view of the State's interest in avoiding confusion, law ruling, you know, backwriting, whatever. How do you distinguish this case so that we wouldn't be bucking a parade out there? Your Honor, none of those States, none of those cases involved where the State had delegated to your enemies the right to come sue you because they wouldn't have standing in most States. They don't have the legal standing to come make an attack on a statute on an issue petition before the election. The judges don't want to hear it because the election might defeat it and it would be moot, so they don't want to touch it. But in Nevada, they've given them the standing to sue. They've given them the standing to block you so you don't ever get to the point where you can exercise free speech. All of the cases I've heard. I mean, it's not on the substantive ground, as it were. It's not on the substantive ground. I mean, it's the suit is saying, you know, can this meet the requirements to make it onto the ballot, right? Yes. It's not, you know, your subject matter somehow can't be the subject of an initiative or referendum. But it's the way they're interpreting the single subject, Your Honor. Yeah. Well, we can't exactly overrule Nevada's interpretation. I mean, Nevada's Supreme Court has upheld the precise statute against a fairly similar challenge. But it is effectively, as applied, is killing the initiative process in Nevada. It's killing it. You can't get any on it because of it. Okay. So the First Amendment. I'd better save that for you. You have another question before I sit down? No, it's okay. I know. Okay. Thank you. Good morning. May it please the Court. I'm Wayne Howell, here for the Nevada Secretary of State. And I'd like to, I guess make a statement first. For the record, there is no conspiracy in Nevada. The summary of my argument today is we're examining two content-neutral statutes that are very common in different jurisdictions. They have a long heritage. They serve extremely important state interests. And they don't create a severe burden. They apply the same to everyone. They're certainly, in this case, a chronicle of disappointment. But the only thing that proves is not the burden, but the fact that we need the statutes and we need the rules. And I will explain. So Judge Reimer asked Mr. Waters about, you know, how do you differentiate this from other states. And the distinction he drew was the fact that in Nevada you have the ability of anybody to come in and to come into court to challenge it. And basically his argument is they put on the four corners offense and run out the clock, essentially. Are there other states that have the same kind of provision where, you know, any person can come in and challenge an initiative on similar grounds? Yes. And let me explain first that this procedure wasn't created by our statutes. It's only limited by NRS 295-061. Right. You made that argument in your brief. In other words, there's a common law in Nevada. It's written practice. It's what someone does to control an official's behavior. Very commonly it's the Secretary of State to prevent an issue from going on the ballot. And that occurred a lot in Nevada. And it became difficult for the district courts and the Supreme Court to deal with. So what you're saying is even if that provision wasn't part of this law, it would still be there because you'd have it as a matter of Nevada writ laws, common law writ laws. Yes. And it is in other states. I went through my cases last night, and I found two just for example. One from Colorado, which coincidentally follows the Tenth Circuit decision in Montero, which Mr. Waters cited to. But at 908 P. 2nd, 125, there is a pre-election challenge to a petition. Also in Oklahoma in 1996 at 927 P. 2nd, 558. This is not uncommon. Another one from California is the city of Riverside, which sued to or petitioned to prevent a petition from going on, an initiative petition from going on the ballot at, I'm sorry, I need to reach for the glasses. At 155 Cal F. 4th, 1582. So this is not unique. This is how it happens in many states, and the fact is it serves to the benefit of initiative petitioners to have it constrained and limited as Nevada's done in 295-061. I'd also like to make a point that there are important state purposes served. They're universally acknowledged. To prevent voter confusion, a single subject is meant to present a discreet issue for the voters to consider. It promotes informed decision-making. Description of effect does promote informed decision-making by explaining to the voter what the measure is about, which is essential for informed voting. And it prevents log rolling and cycling and those kinds of phenomena, which I've tried to present in the brief some of the academic writing about all of these theories. They're very well established. This is nothing new. Again, very important purposes that the state accomplishes with these rules. And I'd like to talk about the burden. Again, the burden is not severe. In this case, the burden has been self-inflicted by the appellants. They've cited a number of measures which have gone through Nevada's process and failed or fell out for one reason or another. And I'll refer to a few of them. And I've put them in two categories. First, measures where the petitioners did not use diligence. So in Las Vegas Convention and Visitors Authority, LVCVA v. Miller, there was a failure to even try to comply with the petition circulator affidavit requirements. They left out two specifically required provisions for affidavits, and so the petition failed. In We the People, a tax reform measure, they failed to get the signatures in on time. There was a specified time to have them submitted to the Secretary of State. They missed it. In TASC, which was the case entitled Nevada's for Nevada v. Beers, there was a the petitioners erred by submitting two different versions of the petition, one for filing and one for circulation. So the voters were voting for something different than what was on record with the Secretary of State. So those are the kinds of cases in which diligence was not used by the petitioners. In other cases, the second category that I've developed, I'd say they were overly ambitious. The petitioners were overly ambitious. Mr. Waters referred to one, the personhood initiative, and it's just 14 simple words. It says, to this effect, that the term person applies to every human being. Well, it sounds simple, but that affects so many different parts of Nevada's statutes that it would be almost impossible to enumerate. One that it affects is the area of abortion rights. And ironically, the description of effect did not identify that. So it may be facially a simple measure, but as far as informing the voter and preventing voter confusion, again, it's a good thing we had the rules in place. Another example was the so-called PISTL initiative, which was presented to respond to the Supreme Court's decision in Kelo, which dealt with takings, eminent domain. And again, the ambition of the petitioners was their downfall because it was a lengthy measure, and it addressed not only the definition of takings and said that there could be no takings of public or private property for private person's use. That was to change Kelo. But then it also weighted into all kinds of measures to recompense for diminution in value of property. It established property rights as a fundamental right. And so, again, it would have affected innumerable portions of our statute. So there's quite a collection here of petitions, but they're all defective. And there are reasons why they were rejected. And it wasn't a conspiracy of State officials or any other nefarious purpose. They were rejected for very good reasons. Following from the Chronicle of Disappointment, there were a number of statements which are presented by the appellants. For instance, 10 out of 15 were derailed. Four of the petitions were voluntarily withdrawn. Each side folded in one case. Less than 10 percent made it on ballot. This is really not a formula. It's not any kind of – it doesn't prove anything regarding the burden that the rules present. It's basically a very limited collection of data. And it's very subject to the petitioners on actions themselves. They had an effect that led to these data, these numbers. And so that is no basis upon which I would submit respectfully that State's laws would be invalidated or overruled. As far as the burden on speech, you know, I see from this Court's decision in Pratt that there is no litmus test. I understand that for determining the severity of a burden. In each case, it's necessary to go through the difficult analysis. What I see, though, is that this is not at all like the petition circulator cases, where the rule somehow limits petition circulators and therefore impinges on face-to-face communication, the communicated aspect of the process. This case is not like that. It's not a circulator case. As far as the single-subject rule goes, as the Court in Campbell said, single-subject would actually stimulate more discussion because it would separate out the otherwise combined ideas that are put into one initiative petition. And by separating them out and presenting them separately, there would be more communication, not less. And, well, let me just conclude. And I would submit that the district court did get the decision right in this case, that the district court's decision does, in this case, it does pass the five-week-old unrefrigerated dead fish rule from Pratt in footnote 23. It's not plainly wrong, the court's decision, that these rules are important for Nevada, necessary to carry out a disciplined development of law. Legal writing of law is a craft. It's not a hobby. There is a skill to it. And I think when done properly, it's something that will go through Nevada. The appellant's exhibits, which I don't object to, they were submitted today, they'll show you that there were four measures on the ballot this time in Nevada. They were from the legislature, and the legislature knows how to write law. They're subject to the same challenge as any other measure, but they survived. And, again, that just illustrates that it can be done, actually, and successfully in Nevada. So, respectfully, I would ask you to please affirm the lower court's decision and preserve Nevada's laws. Thank you very much. Thank you, Mr. Howells. Mr. Waters. Please, the Court. One of the initiative petitions by Sharon Engel that they said got there late, that's because they got run out of time because they were sued under the single subject and under the right to sue and under the challenging statute for the single subject, and for the way they described it, they got sued. Three times they got sued. They pulled it off the ballot, rewrote it, put it back on, get sued again. So, right? Mr. Howells says that that would have been a feature of Nevada procedure, even without a particular statute, in other words, a common law writ. So why is that a problem with the statute? Well, I'll tell you why. Because up until this right to sue statute got on, the way Nevada interpreted it, unless you're challenging the facial unconstitutionality of an initiative petition, they won't let you sue before it gets put on the ballot because it may be moot. The people get to vote on it. If they vote it down, the court don't have to get involved in it. So the law, the statute advances that makes it, you can challenge it earlier. It gives it to your enemy to sue you. In Colorado, in Campbell, if you read Campbell, it says we won't let the enemies or the political opponents come in and help us write this. That's not any of their business. They have a procedure for it. In fact, in Florida, you can take the signatures. If you don't get it on the first cycle, they're good for the next cycle, either good for six or eight years. Ours disappear. If we don't get it on that cycle, you've got to start all over again. And it's viewpoint discrimination. They're not going to let you get it on if they don't like it. They're not going to do it. They're going to stop it because they're going to run you out of time and out of money, even if they don't violate the single subject. Counsel suggests that we're so stupid over there. And I know some of the circuit courts think our bar is not that bright. And I agree. But we're not that stupid. We can write the single subject. We know how. Some of these are written, including one on pistol that I wrote myself, was the last one that got on the ballot. And they learned their lesson because it was so popular, passed two to one, twice, on two different general elections. It was so popular. And they said, we can't have this anymore because it's so popular, we can't get the Supreme Court to take it off the ballot. So they put this right to sue in so they can sue you and tie you up and run you out of time. That's what they do. Any questions? Anyway. I think we've exhausted our questions. I just want to remind the Court that the overbroad and the vagueness has never been brought up on the single subject before. Thank you.  I think we're aware of that. Thank you, Mr. Waters. This is how the matter just argued will be submitted. Thank you.
judges: Kennelly, Alarcon, Rymer